Filed 1/4/21  P. v. Thomas CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>MARQUISE THOMAS,<br><br>    Defendant and Appellant. | A159916<br><br>(Alameda County<br>Super. Ct. No. 175094C) |

Appellant Marquise Thomas appeals from the order denying his petition for resentencing pursuant to Penal Code section 1170.95[1] and Senate Bill No. 1437, which is an appealable order.  (§ 1237.)  His court-appointed counsel has filed a brief raising no legal issues and requesting this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Appellant's counsel advised him that he may file a supplemental opening brief raising any issues he believes are arguable within 30 days of counsel filing his *Wende* brief in appellant's behalf, and that counsel would remain available to brief issues as requested by the court.  Appellant has not filed a supplemental brief.

---

[1] All statutory references are to the Penal Code.

1

## FACTS AND PROCEEDINGS BELOW

Appellant was previously convicted of one count of first degree murder of Jubrille Jordan (§ 187, subd. (a)), and one count of attempted murder of Wyone Bordley (§§ 664/187, subd. (a)) and sentenced to a total term of 32 years to life consisting of 25 years to life for first degree murder and a consecutive term of seven years to life for his premeditated attempted murder conviction.  On appeal, we affirmed appellant's convictions and sentence in an unpublished opinion entitled *People v. Bhushan et al.* (Nov. 30, 2018, A145855) (*Bhushan*).

On March 28, 2018, appellant filed a petition in propria persona seeking resentencing under section 1170.95 and Senate Bill No. 1437.  In other words, appellant claimed he was convicted of felony murder or murder under a natural and probable consequences theory, the complaint allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was convicted of murder following a trial at which he could be convicted for first or second degree murder, and he could not be convicted of either of those offenses after January 1, 2019, due to the enactment of Senate Bill No. 1437.

Two days later the trial court appointed counsel for appellant and requested briefing on whether appellant had made a prima facie case showing entitlement of relief under section 1170.95.  On June 17, 2019, the People responded that appellant's petition should be denied because he was not charged under either a natural and probable consequences or felony murder theory of liability and he therefore could not make the requisite prima facie case.

On February 7, 2020, the trial court denied appellant's petition on the basis of the record of conviction, which showed that he was not convicted

under either a natural and probable consequences or felony murder theory of liability, and was manifestly unable to make a prima facie showing of entitlement for relief.

Appellant filed a timely notice of appeal.

## DISCUSSION

The record of appellant's conviction relied upon by the trial court included our November 2018 *Bhushan* opinion affirming that conviction.

As the *Wende* brief points out, appellant's two codefendants, Vijay Bhushan and Lilron Jones, were tried separately from appellant, but the three defendants' cases were consolidated for purposes of appeal.[2]

In denying appellant's petition for relief under section 1170.95, the trial court relied primarily on the facts set forth by this court in affirming the convictions of Bhushan and appellant and conditionally reversing the conviction of Jones and remanding that case to the juvenile court. We shall also rely on the facts described in our opinion, which we summarize as follows.

On the afternoon of December 30, 2012, a 15-year-old girl, Jubrille Jordan, was killed by a bullet to her head as she was standing on the sidewalk near the "69th Avenue Village" (Village) housing complex in Oakland. She was waiting with her sister, two young male friends, and a baby while another friend stopped to talk with two other male friends. One of the young men in the group was Wyone Bordley, who was contemporaneously shot in the foot. Bordley was the intended target of the shooting.

---

[2] For reasons that are not clear, appellant was identified in the trial proceedings in *Bhushan* as Marquise Thompson, not, as in the present case, Marquise Thomas.

3

About six months earlier, Hadari Askari, also a 15-year-old girl, had been shot to death in the Village.  Although no one was charged, Askari's family and friends had information that Bordley was the killer, and they wanted to see Bordley killed in revenge.  There was an understanding that appellant, Bhushan, and Jones would "take care of it."

On December 30, 2012, Marquesha Ruth, Askari's cousin, saw Bordley in the Village and called Bhushan and Sammie Standberry, her brother, and told them where she had seen Bordley.  As Ruth and Standberry were waiting outside their apartment, Bhushan drove up with appellant in the passenger seat and Jones in the back.  The three said they were "getting ready to go over to the 6-9 Village and take care of Bordley," which Ruth took to mean they were going to kill him.  "Specifically, Bhushan said, 'Man, we about to go over there and get on this nigga . . .' and the others in the car nodded."  About half an hour after the group in the car drove away, Ruth learned there had been a shooting in the Village in which an innocent girl was killed, and hoped appellant, Bhushan, and Jones didn't have anything to do with it.

"The next morning, Ruth heard [appellant] telling Standberry that he was mad because 'when he got over there' Bhushan was scared and 'froze up,' so [appellant] 'took matters into his own hands.'  In a recorded call between Ruth, Bhushan, and Thompkins, Ruth told Thompkins, with reference to the shooting, that "'[t]hey said he [i.e., Bhushan] was looking at the nigga and froze up' and that [appellant] and Jones 'got back his out [*sic*] and shit got ugly man.'  Bhushan said he would write and tell Thompkins about it.  A week or two later, Ruth heard Bhushan talking with Standberry, saying that he did not 'freeze up,' he 'just felt that it was not a good time.'

"On December 31, 2012, San Francisco police officers who detained Standberry and [appellant] for having an open bottle of alcohol in public, found a loaded Smith and Wesson in [appellant's] waistband. The bullet recovered from Jubrille Jordan's body was determined to have been fired from this weapon. The eight shell casings found on the sidewalk at the scene of the shooting came from this weapon. A box of ammunition matching that found at the scene was found in a search of [appellant's] home."

Appellant argued on appeal that he had presented a two-fold defense: First, he was not involved in the shooting in any way, but if he was involved, he intended only to participate in an assault, not a killing. This theory was based on Ruth's testimony that when she saw appellant, Bhushan, and Jones just before the shooting, Bhushan said "Man we about to go over there and get on this nigga." Appellant conceded this could have been interpreted as communicating an intent to kill Bordley, but maintained it could also be interpreted as reflecting only an intent to assault Bordley, and he could not then be found guilty of murder as an accomplice.

We rejected this argument because there was never a suggestion at trial that appellant intended to participate in an assault, not a murder, and no evidence he aided and abetted the shooting. Thompson's defense was simply that he was with Bhushan and Jones, but knew nothing about their intentions in going to the Village, and that the evidence failed to convincingly show that either of the shooters was him.

We rejected appellant's reliance on the statement in CALCRIM No. 400 that "[u]nder some specific circumstances, if the evidence establishes aiding and abetting of one crime, then a person may also be found guilty of other crimes that occurred during the commission of the first crime." Appellant contended that in giving this instruction, the court recognized that he may

5

not have intended to commit a murder, but may have intended to commit some other lesser offense, such as an assault. We rejected this argument because the portion of the instruction, at issue should only be given "[i]f the prosecution is also relying on the natural and probable consequences doctrine," and the prosecutor in this case did not rely on that doctrine with respect to aiding and abetting, and neither did the court instruct on it; so the portion of the instruction appellant relied upon was "superfluous." (*Bhushan*, *supra*, A145855.)

As we said, appellant was not convicted of first degree murder on the theory invalidated in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*)—which held that an aider and abettor may not be found guilty of first degree murder on a theory of natural and probable consequences[3]—and "[i]n both the jury

---

[3] *Chiu* held that an aider and abettor may be convicted of first degree premeditated murder only "based on direct aiding and abetting principles." (*Chiu, supra*, 59 Cal.4th at pp. 158–159.) Under direct aiding and abetting principles, one who "knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent," thereby acting "with the mens rea required for first degree murder." (*Id*. at p. 167.) Under the natural and probable consequences doctrine, " '[b]ecause the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.' " (*Chiu*, at p. 164.) The natural and probable consequences is based upon a public policy of deterring "aiders and abettors from aiding or encouraging the commission of offenses that would naturally, probably, and foreseeably result in an unlawful killing." (*Id*. at p. 165.) First degree premeditated murder, however, requires a mental state—not only intent to kill but also deliberation and careful weighing of the considerations for and against killing—that is "uniquely subjective and personal," and the harm resulting from a nontarget murder is the same regardless of whether the perpetrator acted with premeditation and deliberation. (*Id*. at p. 166.) For these reasons, *Chiu* held that "the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to

6

instructions and the prosecutor's argument, the natural and probable consequences doctrine was discussed *only in connection with conspiracy liability*." (Italics added.) Appellant could not have been convicted on a conspiracy theory, however, because the jury was expressly instructed that " 'liability of murder committed under the theory of conspiracy is limited to second degree murder.' " (*Bhushan*, *supra*, A145855.)

Appellant contended that "the trial court erred in failing to instruct on a lesser included offense of manslaughter as a natural and probable consequence of aiding and abetting an intended assault," and that "if the jury believed he intended only to aid and abet an assault, it could have found him guilty of manslaughter as a natural and probable consequence of the assault he aided and abetted." The trouble with this argument, as we explained, is that the theory appellant intended to aid and abet an assault was never suggested at trial and defense "counsel's characterization of it as a 'central defense' is completely belied by the record." Furthermore, we added, "[t]he sole basis of the argument is the asserted ambiguity of the statement Ruth described Bhushan making about the group's intention (" 'we about to go over there and get on this nigga' "). The premise of appellant's "argument is that this evidence was sufficient to trigger the court's sua sponte duty to instruct on lesser included offense," a proposition we dismissed. (*Bhushan*, *supra*, A145855.)

Appellant was charged with and convicted of murder in the first degree (§ 187, subd. (a)) in a trial at which the prosecution was *not* allowed to proceed under a theory of felony murder or under a theory of natural and

---

impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved and the above stated public policy concern of deterrence." (*Ibid.*)

probable consequences.  Accordingly, as the trial court found, he is not entitled to the relief he seeks under section 1170.95.

The court's determination is not arguably erroneous as a matter of law, and therefore no further briefing is required.

Accordingly, the challenged order is affirmed.

 
 
 
_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*People v. Thomas* (A159916)